Millisan, J.,
delivered the opinion of the Court.
The prisoner, Martin Crawford, with twenty-four others, ivas indicted in the Circuit Court of Hawkins *191 County, for the murder of George Dykes. Crawford, alone, was put upon his trial at the June Term, 1866, and hy a jury of the county, found guilty of voluntary manslaughter, and sentenced to the Penitentiary for the period of five years; from which he has prosecuted an appeal in error, to this Court.
The facts necessary to he noticed are brief, and substantially as follows :
The homicide occurred in April, 1865; and at the time of its perpetration the deceased was a paroled Federal Soldier, residing in the neighborhood in which it took place. The war was near its close, and the rebel army, which then occupied a portion of this part of the country, north of the Ilolston River, was about retiring before the Union forces.
The deceased, with several others belonging to the Federal army, on the night of the killing, was, it appears, at the house of one Jones, on the south side of the river, whose wife was dead, for the purpose of aiding in digging the grave and otherwise assisting in the funeral services. Jones’ house stood in the disputed territory, and parties from the opposing forces alternately occupied this middle ground, as they were enabled by the strength of their respective forces, to do so.
The prisoner was a private in the rebel service, under the command of General Yaughn, and on the night of the homicide, he constituted one*, of a scouting party of rebel soldiers under the immediate command of one Captain Ross, who appears to have been on the south side of the river, in the disputed territory. The dis *192 tinct object and purpose of this party, does not very clearly appear from this record. It seems, however, that they killed three men, and robbed the house of. another, during the excursion. The proof shows the party had heard of the death of Mrs. Jones, and went to the ho'uso; for what purpose, we are only left to infer. The deceased was there, and heard their approach and attempted to escape, and when he was some distance from the house he was fired on, and mortally wounded. The others of the party at Jones’ house were captured and carried away.
There is no evidence that the prisoner was at the house at the time of the firing, much less that he actually participated in the killing, otherwise than as it appears from his own confessions, after his arrest on this indictment, and while in the custody of the offieer.
Iiis confessions are proven to have been freely and voluntarily made, and they are copied into the bill of exceptions as brought out by the State, in the following language: “ The defendant, and two others, arrested with him on the same charge, stated that they were along on the expedition when Dykes was killed, but were not present at the time. The defendant said he was not present — that he did not want to go with the scout that night, and was ordered and forced to go by the Captain. That they heard before getting to the house of Jones, that his wife had died, and he expected there would be men there and some one would be killed, and he did not want to have anything to do with it; and getting an opportunity, they dropped out, about three hundred yards from the house, at a branch *193 and did not go up until the shooting was over.” There is no other evidence implicating the prisoner with the homicide, or even connecting him with the rebel “scout,” than his own confessions, and ■ the case must turn principally upon the weight that is to he given to them.
The Circuit Judge, on this branch of the case, instructed the jury, that: “ Confessions made freely and voluntarily, by one accused of crime, whether made before or after apprehension, in the course of a judicial examination or not, or after commitment, whether reduced to writing or not, if satisfactorily proven, when there is proof of the corpus delicti, is strong evidence against him, unless made when the accused was influenced by threats or promises, extorted by pain, or made under the influence of hope or fear; then they cannot be received as evidence against the accused.”
This part of His Honor’s charge, as it is insisted, is obnoxious to the criticism — that it does not give the prisoner the benefit of the whole confession, as well that which is in his favor as that which is against him, and, therefore, calculated to mislead the jury.
The law on this subject, in Tennessee, is well settled. Confessions in a criminal case must be taken altogether, and not by parcels. If the part of the confession which goes in discharge of a defendant is not disproved, the jury cannot be allowed arbitrarily to reject it, and to go upon the part only which criminates him: Tipton vs. The State, Peck 308, 311; McPherson vs. The State, 9 Yer., 280-1; also, Haisten vs. Hixen, 2 Sneed, 361.
*194 But, if, after the whole statement is given in evidence, the prosecutor can contradict any part of it, he is at liberty to do so; and then the whole testimony is left to the jury for their consideration, precisely as in other cases where one part of the evidence is contradictory to another; for, it is not to be supposed that all the parts of a confession are entitled to equal credit;
The jury may believe that part which charges the prisoner, and' reject that which is in his favor, if they see sufficient grounds for doing so. If what he said in his own favor is not contradicted by evidence offered by the prosecutor, nor improbable in itself, it will naturally be believed by the jury, and they are not authorized arbitrarily to reject it; but still, they are not bound to give it weight on that account, but are at liberty to judge of it like other evidence, by all the circumstances of the case: 1 Greenleaf’s Ev., section 218.
Now, this ease, resting as it does, wholly on the prisoner’s admissions, to say nothing of the rights that might arise from the fact that he was, at the time of the homicide, a soldier in the rebel army, and engaged in active hostilities against the armies of the United States, entitled him to a full exposition of the law applicable to the facts of the case upon which the verdiet of the jury must turn. It is not enough, in criminal cases involving the life and liberty of the accused, that the law of the case be partially stated. The accused is entitled, in such cases, to such a charge as the facts of the case *195 require, and nothing short of that will satisfy the demands of justice: Allen vs. The State, 5 Yer., 453-456; Nelson vs. The State, 2 Swan, 482; 9 Hum., 411.
Not that the verdict would he otherwise, in every such instance, if the law had been fully charged; but it is enough if it might have been different under full instructions to the jury.
Other exceptions are taken to the charge of the Court, on the ground that the Circuit Judge did not state the law fully upon other points, which we do not deem necessary now to notice, as the judgment of the Circuit Court must be reversed, and a new trial awarded on the grounds before stated.